UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS M. SALYERS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) 1:15-cv-00265-SEB-DKL |
| ALEXANDRIA POLICE DEPARTMENT, *et al.* | ) ) ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This cause is now before the court on Defendants' motion for summary judgment on Plaintiff Thomas Salyers's 42 U.S.C. § 1983 claims of excessive force and state law claims of breach of duty. [Docket No. 22]. For the reasons explained below, Defendants' motion is **GRANTED in part** and **DENIED in part**.

**Factual Background**[1]

At some point during 2014, Thomas Salyers fell behind in his child support payments and, as a result, was ordered to attend proceedings in the Madison County 4-D Child Support Court in Anderson, Indiana. After failing to appear for his hearing, a warrant was issued for Salyers's arrest.

---

[1] For the purposes of summary judgment, Defendant stipulated to the facts as recounted in Plaintiff Thomas Salyers's and his father Michael Salyers's depositions and are therefore undisputed by the parties.

On August 1, 2014, Officers Kyle Williams and Cody Antrim of the Alexandria Police Department approached Salyers, who was taking a walk on his street, and informed him that a warrant had been issued for his arrest. Salyers's immediate response was disbelief, but after Officer Williams obtained Salyers's driver's license, he was able to confirm for Salyers that a warrant had indeed been issued. After confirmation of the warrant, the officers allowed Salyers to finish smoking his cigarette and advised him to empty his pockets and leave his belongings with his father, with whom he had been walking. Salyers requested that the officers not arrest him in front of his children, who were playing in the street, to which Officer Williams responded, "…if you want, we can step behind the car when the time is right, when you're done with your cigarette. We're not in [a] hurry. Take your time…" Salyers Dep. 44:12–16. While the men were standing beside the vehicle talking and waiting for Salyers to finish his cigarette, Salyers reminded Officer Williams, who Salyers knew personally, that he had undergone rotator cuff surgery on his right shoulder and that he did not think he could be handcuffed behind his back. Officer Williams told Salyers that the officers had to cuff him behind his back— which Salyers "accepted for what it was worth"—and told Officer Antrim to use two sets of handcuffs and to be gentle when doing so. *Id.* at 50:9–11. When Salyers noticed that his children had left the street and were out of sight, he "threw [his] cigarette down real quick and said, all right, let's do this, let's get it done." *Id.* at 44:21–25.

In response, Officer Antrim placed a set of handcuffs on Salyers's left wrist and, with the help of Salyers, moved that arm behind his back, bending it at the elbow. He

2

then placed another set of handcuffs on Salyers's right wrist, which Salyers was holding as far back as he could manage. Due to its limited mobility, Salyers's right arm was not far enough back for the two sets of handcuffs to be linked together. When Salyers told Officer Antrim that his right arm could not extend back any farther, Officer Antrim responded, "Yes it will," and grasped Salyers's hand by his fingers, pulling them farther back and lifting them up so that his wrists could be double-cuffed together. *Id.* at 47:19–25. Salyers testified that when Officer Antrim moved his right arm back, it "really hurt" and caused a "burning" sensation, and when Officer Antrim pulled up on his fingers to double lock the handcuffs, it "really killed [him]." *Id.* at 48:2–6. He stated further that Officer Antrim was "a little rougher than what he should have been" and that "he didn't have to lift [his] arms up that high." *Id.* at 48:53:22–54:2. However, despite the pain he felt in his shoulder while being cuffed, Salyers testified that he "basically beared down and just took it, bit [his] lip and go." *Id.* at 52:4–5.

After being cuffed, Salyers was escorted to the police car and placed in the front passenger seat where he remained for about five minutes before the officers took him to the Madison County Jail, which was around ten minutes away. During the ride to the jail, Officer Williams asked Salyers how his shoulder felt, to which Salyers responded "the best it could be under the circumstances." *Id.* at 56:10–11. Officer Williams rejoined by telling Salyers to lean as far as he could to his left to relieve pressure on his shoulder. *Id.* at 56:15–21. While in transit, Salyers also asked if the officers would stop the car and allow him get out and stretch his arm. Officer Williams told him that they had to take him

3

straight to the jail and that they could not stop the car. Minutes later, they encountered an "extremely rough" portion of road and Officer Williams instructed Officer Antrim to changes lanes in an effort to create a smoother ride and alleviate any pain that the rough surface may cause Salyers. *Id.* Throughout the ride, Officer Williams continued to ask about Salyers's shoulder and whether Salyers would be okay and Salyers continued to respond that there wasn't much that could be done about it. *Id.* at 57:11–13. At no point during the trip did Salyers request to be taken to the emergency room or any request any other medical care. *Id.*

Upon reaching the Madison County Jail, Officer Williams assisted Salyers in exiting the vehicle, at which time Salyers told Officer Williams that he needed to be uncuffed and that he could no longer tolerate the pain in his shoulder. Officer Williams told Salyers that a member of the jail's staff had to remove the handcuffs but that he would "do the best [he] could" to get them removed promptly. *Id.* at 58: 6–7. He then escorted Salyers into the booking area, sat him at a bench, and informed a jail staff member that Salyers needed to be uncuffed. According to Salyers, it took less two minutes for a staff member to come over and remove his handcuffs. *Id.* All told, Salyers spent approximately fifteen minutes in handcuffs. *Id.* at 59:4.

After the handcuffs were removed, Salyers' shoulder continued to hurt and its movement remained restricted. *Id.* 59:13–18. Before leaving the jail, Officer Williams read Salyers his arrest warrant and apologized for having to arrest him. He also made a

4

final inquiry into how Salyers's shoulder felt, to which Salyers responded, "it hurts but everything will be all right." *Id.* at 61:1.

Salyers was bailed out of jail by his wife around 11:00 p.m that night and taken home, after which, he went to his father's house. Upon noticing that Salyers's arm, hand, and shoulder were swollen and shaking, Salyers's father took Salyers to the Community Hospital in Anderson where he received an x-ray and was instructed to contact his orthopedic surgeon. *Id.* at 64:25–65:7. According to the medical report submitted by Dr. Buschbacher, Salyers sustained a small recurrent tear of the supraspinatus, minor tearing of the superior labrum, and a new anteroinferior labral tear in connection with his arrest. Dkt. 24-5 at 6.[2] Salyers claim that, as a result of the injuries, he needs over $100,000 in medical procedures and therapy.

On February 2, 2015, Salyers filed suit against Officer Williams, Officer Antrim, and the Alexandria Police Department in the Madison Circuit Court, which was removed to this Court by Defendants on February 19, 2015, alleging that Defendants breached their duty of care under Indiana law and used excessive force in violation of the Fourth Amendment of the United States Constitution. On October 27, 2015, Defendants fileda motion for summary judgment.

---

[2] Defendants dispute that Dr. Buschbacher's report establishes causation between the noted tears and the arrest occurring on August 1, 2014. See Dkt. 25 at 4. However, as explained below, this dispute is immaterial to our analysis of the issues on summary judgment.

## Legal Standard

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes as to material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See *id.* at 255. However, neither the mere existence of some alleged factual dispute between the parties, *id.* at 247, nor the existence of some metaphysical doubt as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). But, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

## Discussion

Defendants argue that they are entitled to summary judgment because: (1) Officer Williams's and Officer Antrim's actions were objectively reasonable under the Fourth Amendment; (2) the officers are entitled to qualified immunity; (3) Plaintiff has failed to raise a proper claim against the Alexandria Police Department under 42 U.S.C. § 1983; and (4) Law enforcement immunity bars Salyers's state law claims.

### I.     Fourth Amendment Excessive Force Claims

Salyers has claimed that Officer Antrim and Officer Williams used excessive force when they handcuffed him behind his back. Allegations that police officers used

7

excessive force are analyzed under the Fourth Amendment's standard of "objective reasonableness." *See Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

At the outset, Defendants argue that their use of handcuffs clearly satisfies the objective reasonableness standard because an officer who has the right to arrest an individual also has the right to use some degree of physical force to effectuate the arrest, *see Graham* 490 U.S. at 397, and "[t]here is no general constitutional right for an arrestee to be free of handcuffs." Dkt. 23 citing *Robbins v. Lappin*, 170 F. App'x 962, 964 (7th Cir. 2006) (citing *Soares v. Conn.*, 8 F.3d 917, 922 (2d Cir. 1993)).

This argument, however, is built on a faulty foundation. Although an arresting officer has the right to use some force in effectuating an arrest and "handcuffing will be the reasonable course in many, if not most arrest situations," there is no *per se* rule that the use of handcuffs is always reasonable. *Soares,* 8 F.3d at 922. Indeed, the Seventh Circuit has made clear that under the Fourth Amendment, "[a] person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury, if that person presents little or no risk of flight or threat of injury." *Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014) (citing *Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir. 2009)).

Of course, as is the case with any excessive force claim, whether or not an officer's use of handcuffs is unreasonable depends on the particular circumstances of the arrest. *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) ("A police officer's use of force is unconstitutional if, 'judging from the totality of circumstances at the time of the

arrest, the officer used greater force than was reasonably necessary to make the arrest.'"). In some cases, the officer's actions, by themselves, will reveal their unreasonableness. *See Id.* at 779 (concluding that it was not objectively reasonable for the officer to twist the plaintiff's arms, force them behind her back, and over-tighten her handcuffs to the point of causing numbness and significant injury, when the plaintiff had not threatened harm to anyone, was not resisting arrest, and was charged with a minor offense). In other situations, however, "it may become clear that, although a particular action would not ordinarily harm an arrestee, the action would nevertheless cause pain or injury to the particular individual being placed under arrest." *Stainback*, 569 F.3d at 773. The most common example of this type of unreasonable conduct is where an officer knows that an arrestee is injured or otherwise disabled and presents no threat of harm or flight, yet the officer ignores the injury or disability and effectuates the arrest without accommodation for the arrestee's impairments. More precisely, a body of law has developed holding that if an officer knows of a preexisting injury or medical condition that will be aggravated by handcuffing an arrestee behind his back, the officer is "obligated to consider that information, together with the other relevant circumstances, in determining whether it [is] appropriate to handcuff [the arrestee in such a fashion.]" *Stainback,* 569 F.3d at 773. If the officer fails to consider the injury or condition and handcuffs the arrestee behind his back regardless of his impairment, the clearly established law provides that the officer has acted unreasonably. *See e.g.*, *Reimer v. Sanders*, 2010 WL 4736260, at *2 (C.D. Ill. Nov. 16, 2010) (holding that a reasonable officer could have concluded that handcuffing a plaintiff behind his back although he was not resisting arrest, posed no threat of injury,

9

and had told officers that his shoulder was broken, was excessive and would inflict unnecessary pain); *Walton v. City of Southfield,* 995 F.2d 1331 (6th Cir. 1993) (denying qualified immunity to an officer who arrested the plaintiff for a suspended license and handcuffed her behind her back although she told him that she was returning from a doctor's appointment for a sore shoulder and requested that she not be handcuffed behind her back); *Watts v. McSherry*, 2013 WL 5498254, at *4 (N.D. Ind. Oct. 2, 2013) (denying summary judgment where the plaintiff, who was arrested on a fourteen year old warrant, notified the officers of three prior shoulder surgeries and requested that he not be cuffed behind his back, but the officers "seemingly ignored" the request); *see also Coleman v. City of Chicago*, 2011 WL 1542129, at *5 (N.D. Ill. Apr. 22, 2011); *Freeman v. Brown*, 2015 WL 2399353, at *5–6 (N.D. Ill May 18, 2015); *Rex v. City of Milwaukee*, 321 F. Supp. 2d 1008, 1014 (E.D. Wis. 2004); *Howard v. Dickerson,* 34 F.3d 978, 981 (10th Cir. 1994); *Guite v. Wright,* 147 F.3d 747, 750 (8th Cir. 1998); *Caron v. Hester,* 2001 WL 1568761 at *6 (D. N.H. Nov. 13, 2001); *Ferguson v. Hall,* 33 F.Supp.2d 608, 612 (E.D. Mich. 1999); *Aceto v. Kachajian*, 240 F. Supp. 2d 121, 125 (D. Mass. 2003).

Here, Defendants argue that they did not *knowingly* inflict pain or injury when they handcuffed Salyers behind his back because Salyers did not cry out in pain when Officer Antrim pulled his right arm behind his back, nor did he ask the officers to stop what they were doing or raise repeated, specific concerns about his shoulder after being cuffed. Dkt. 23 at 11–12 citing *Tibbs v. City of Chicago,* 469 F.3d 661, 666 (7th Cir. 2006) (concluding that the arresting officer did not act unreasonably when he fastened the

plaintiff's handcuffs too tightly, and the plaintiff, whose injuries did not require medical care, complained only once about his handcuffs "without elaborating on any injury, numbness, or degree of pain"); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303–04 (7th Cir. 2011)( finding no genuine issue of material fact where the plaintiff failed to complain of an injury when taken to jail and raised only one complaint to the officer that his handcuffs were too tight, but did not elaborate on the injury).

Clearly, "a reasonable officer cannot be expected to accommodate an injury that is not apparent or that otherwise has not been made known to him." *Stainback*, 569 F.3d at 773. Moreover, generalized complaints of pain are not sufficient to alert an officer that handcuffing an arrestee will aggravate a preexisting injury or condition. *Tibbs*, 469 F.3d at 666. However, that is not case before us. The record before us reveals that Salyers specifically reminded Officer Williams that he had recently undergone shoulder surgery and asked that he not be handcuffed behind his back. It further reveals that Officer Williams confirmed that Salyers's had a preexisting shoulder injury and instructed Officer Antrim to be gentle in effectuating the arrest. Given the specificity of Salyers's complaint and the officers' acknowledgement its authenticity, it is clear that they were put on notice of a preexisting injury regardless of whether Salyers continued to complain of pain during or after the handcuffing. Accordingly, they were obligated to consider his injury, along with other relevant circumstances, in determining whether cuffing him behind his back was appropriate. *Stainback*, 569 F.3d at 772.

Giving full credit to Salyers's version of events, a reasonable jury could conclude that the officers' decision to handcuff Salyers behind his back was objectively unreasonable in violation of the Fourth Amendment. The record reveals that Salyers was arrested for a minor nonviolent offense (failure to appear at a child custody hearing), that the officers perceived no risk of safety or threat of injury (foregoing a "pat-down" and allowing him to finish his cigarette while they waited for his children to go inside), and that Salyers specifically told them of his preexisting shoulder injury before asking that he not be cuffed behind his back. Thus, under the prevailing case law in this circuit and others, a reasonable Officer could have concluded that placing Salyers's arm in handcuffs behind his back would inflict pain and discomfort, which was unnecessary in light of the circumstances.

Moreover, because it was clearly established at the time of Salyers's arrest that when an officer is made aware that an arrestee who poses no risks of flight or safety suffers from a preexisting shoulder injury, the officer must fully consider the injury and surrounding circumstances in deciding whether it is appropriate to handcuff that arrestee behind his back or whether such restraint would inflict unnecessary pain, Officer Williams and Officer Antrim are not entitled to qualified immunity on Plaintiffs claim that officers used excessive force by handcuffing him behind his back. *See Watts v. McSherry*, 2013 WL 549825, at *6 (N.D. Ind. Oct. 2, 2013) (citing *Stainback*, 569 F.3d at 772 and *Rabin*, 725 F.3d at 636).

In addition, Officer Williams's argument that he did not use excessive force because he did not apply the handcuffs to Salyers falls short of the mark. After all, it was Officer Williams who, after being reminded of Salyers's shoulder surgery and hearing his request not to be handcuffed behind his back, told Salyers that the officers had to handcuff him behind his back, then instructed Officer Antrim to do so with two set cuffs and stood by while Salyers remained cuffed in the police vehicle and the jail.[3] Therefore, there are genuine issues of fact which preclude summary judgment as to both his direct involvement in the arrest and his failure to intervene. *See Thompson v. Boggs*, 33 F.3d 847, 857 (7th Cir. 1994). Accordingly, we **DENY** Officer Williams's and Officer Antrim's motion for summary judgment on Salyers's Fourth Amendment claim.

## II.     Monell Liability

Plaintiff also named the Alexandria Police Department as a Defendant to his 42 U.S.C. § 1983 excessive force claim. Given that there is no vicarious liability under 42 U.S.C. § 1983, a political subdivision such as a Police Department may only be held liable for a constitutional deprivation if there is an express policy, widespread custom, or final policy-making decision that operates as the moving force behind the violation. *See Monell v. Dep't of Social Serv. of New York*, 436 U.S. 658, 691 (1978); *Rossi v. City of Chicago,* 790 F.3d 729, 737 (7th Cir. 2015).

---

[3] We note that the officers' mistaken belief that they were mandated to handcuff Salyers behind his back does not save them on summary judgment given that the Fourth Amendment requires *objective* reasonableness. *See Graham,* 109 S.Ct. at 1872 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.")

Here, Plaintiff has pointed to no policy, custom, common practice, or otherwise that was enacted or enforced by Alexandria's Police Department and would account for his constitutional deprivation. Instead, it appears that the department was named as a party solely because it was Officer Williams's and Officer Antrim's employer at the time of the arrest.[4] Accordingly, we **GRANT** Defendants' motion for summary judgment on Plaintiff's section 1983 claim against the Alexandria Police Department.

### III.  State Law Negligence Claims

Plaintiff has also alleged that Defendnts "breached their duty of care" when they placed him under arrest "in a manner to harm and/or injure the Plaintiff," thereby causing physical injury to his shoulder. See Dkt. 1-1 at ¶¶ 15–16.

In their motion for summary judgment, Defendants have claimed immunity under the Indiana Tort Claims Act ("ITCA"), which provides:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: … [t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

---

[4] Plaintiff's response to Defendants' motion for summary judgment on this claim stated, in its entirety: "The point was previously addressed with the district court, where it was addressed and part of the hollow arguments presented in their summary judgment motion, without facts to support that. There is a genuine dispute of material facts, assuming arguendo the department was a proper party." Dkt. 24 at 8. Simply put, this left much to be desired. The Court does know to what part of the record Plaintiff is referencing, nor is it our task to hunt through the record in search of it. Because Plaintiff has not raised an argument on summary judgment nor made reference to any applicable policy, custom, common practice, or otherwise, we find that he has waived his argument on this claim.

14

Ind. Code § 34-13-3-3(8). However, the Indiana Supreme Court has recognized an exception to this immunity where other statutes impose affirmative obligations or limitations on law enforcement officers. Specifically, in *Wilson v. Isaacs*, 929 N.E.2d 200, 203–04 (Ind. 2010), the Court held that because Ind. Code § 35-41-3-3(b) authorizes law enforcement to use reasonable only where "the officer reasonably believes that the force is necessary to effect a lawful arrest," the ITCA will not act as a shield to liability for claims of excessive or unnecessary force by law enforcement. Accordingly, Plaintiff's claim that Defendants breached their duty of care (presumably under aforementioned statute) does not fall within the purview of the ITCA's protections. Therefore, we **DENY** Defendants' motion for summary judgment on Plaintiff's state law claim.

## Conclusion

For the reasons detailed above, we find that genuine issues of material fact exist which preclude summary judgment on Plaintiff's 42 U.S.C. § 1983 claims against Officer Williams and Officer Antrim as well as Plaintiff's state law claims of breach of duty against all Defendants. However, because Plaintiff has failed to identify a policy, custom, common practice or otherwise which operated as the moving force behind his alleged constitutional deprivation, his claim 42 U.S.C. § 1983 claim against the Alexandria Police Department must fail. Accordingly, Defendants' Motion for Summary Judgment [Docket no. 22] is hereby **GRANTED in part and DENIED in part**. Plaintiff's constitutional claim against the Alexandria Police Department is **DISMISSED**.

IT IS SO ORDERED.

Date: 5/18/2016     _____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Thomas Dean Margolis
hermes_conundrum@yahoo.com

Robert T. Keen, Jr.
BARRETT MCNAGY
rtk@barrettlaw.com

William A. Ramsey
MURPHY LAW GROUP
war@barrettlaw.com